CARL PECORARO, Plaintiff, v. SHIPPERS DISPATCH, INC., Defendant.

City Court of Buffalo, March 15, 1937.

*Mortimer Allen Sullivan*, for the plaintiff.

*Gibbons, Pottle & Pottle* [*Phillip O'Shea* of counsel], for the defendant.

SUMMERS, J.   The plaintiff while driving his automobile along a State highway was negligently hit from behind by an automotive transportation unit, consisting of a " puller " attached to a semi-trailer.   The " puller," the front part of this hybrid, was owned by a young man not a party to this litigation; the semi-trailer was owned by the defendant.

The owner (defendant) of this semi-trailer offers the defense that the pulling unit was owned and operated by an independent contractor.

As this problem, in its present factual aspect, seems novel, we are considering the various streams of legal thought that may affect the solution of this question.

We may begin by recalling briefly the history of that branch of the law of torts commonly known as negligence.

In the beginning of our legal history, the person inflicting an injury was held responsible, irrespective of his negligence.   The classic example of this was the man whose spear unintentionally impinged against another.   Since this time, the rule has been fluctuating back and forth to and from this point.

Of course, all actions sounding in negligence presuppose a loss.   The plaintiff has suffered an injury.   This injury has occasioned him a loss.   In his law suit the plaintiff is simply trying to transfer his loss to another.   The early law said that the loss having been suffered, the burden of it should be upon the one who occasioned it, irrespective of the actor's fault.

Little quarrel from a moral angle can be had with the logic of this rule.   Economic considerations, however, intervened.   It was feared that enterprise might be discouraged if the one initiating the activity were held responsible for injuries growing out of the operation of the enterprise, irrespective of his fault.   Gradually it came about that the loss occasioned by the operation of industry in its various phases came to rest on the shoulders of the innocent bystander unless he could show some blameworthiness (negligence) on the defendant's part.

Juries have at times tended to revert to the old view, and Legislatures have likewise shown a sympathy with it in the adoption of the laws compensating workingmen.   A modern phrasing of the old rule is that the industry should bear the loss.

There have always been, however, several instances in our law in which personal blameworthiness (negligence), on the part of the defendant, was not required as a condition of making him liable.

The most striking example of this has been in the law of master and servant as it has blended into the law of agency.   The master,

or principal, may have exercised the greatest care in the selection of his servant or agent, he may have given his agent the most approved piece of machinery to operate, or the best possible advice as to the conduct of the business; nevertheless, despite the fact that the master had discharged every moral obligation under the circumstances, if the servant or agent, by his individual neglect in the course of the business, occasioned injury to another, the burden of sustaining the loss by way of damages rested not alone upon the servant (where it has always rested) but there was added the responsibility of the master, who was placed in a position akin to a joint wrongdoer.

The reason for this addition of the master, of course, was economic. Many courts have been either ignorant of this obvious fact or reluctant to accept it, and have sought to spell out some logical theory other than the economic. The result has been much confusion in judicial opinion.

The obvious practical reason for adding the responsibility of the master to that of the servant is that the master is more likely to be able to pay. In other words, the injured party, under these circumstances, was given two strings to his legal bow — the one against the servant, which he always had and has, and the other against the master.

This rule was applied against the master, or principal, no matter under what form of agreement or contract the one doing the work for the master was employed. Gradually, however, there grew up in the community an economic class who undertook work for others, and as this class became financially more stable than the old servant group, they finally came to be called *independent contractors*.

Thus it came about that the principal, or employer for whom the work was being done, no longer need respond in damage for the negligence of his *independent contractor*, who had become able to respond in damages for his own fault. An influence from the the law merchant on the common law around the year 1800 made the adoption of this rule easier.

Whatever may have been the wisdom, in the beginning, of this rule, the rule of independent contractor, a rule made by the court without legislative sanction of any kind, the justice of its application has been seriously questioned by observers of the modern scene. In many instances it has been resorted to for the purpose of escaping from liability on the part of *de facto* principals by creating a new agency, usually under a corporate guise, to do an essential part of the principal's work, which newly created agency is often without financial responsibility. The result of this use

of the rule has been that an injured party ofttimes finds himself without redress, because a great and prosperous industry, engaged in the doing of certain perilous business, has created an irresponsible agency under a legalistic fiction called an independent contractor to do this work. A striking example of this was a metropolitan daily newspaper, the delivery of whose merchandise was carried on by a corporation without financial resources of any moment. Many other examples of this kind might be cited.

Reference is made to this feature of the factual landscape so that when a suggestion is made, as in the present instance, for the extension of this doctrine of independent contractor into a new and heretofore unoccupied field, the widsom of this extension may be weighed by the court.

In a previous paragraph it was pointed out that liability without fault obtains in the sphere of principal and agent, so far as the personal blameworthiness of the principal is concerned. The State recently, by statute, has made an extension of this responsibility, irrespective of personal fault, to owners of motor vehicles.

The owner of a motor vehicle may exercise the greatest care in the selection of the person to whom he loans his automobile; he may advise the loanee as to its operation; he may exercise every conceivable degree of prudence in making this loan of his car; nevertheless, if the operator of the car, the loanee, negligently conducts himself in the operation to the damage of others, the blameless loaner (owner of the car) is held liable.

Courts, in the projection of rules of law into new fields may well look to the legislative branch of the government for suggestive wisdom. The theory that once prevailed, that the act of a Legislature was *prima facie* stupid, which theory resulted in the adoption of the logically indefensible rule that a statute changing the common law should be narrowly construed, can no longer be countenanced.

We have, therefore, these streams of thought playing on this question. The owner of a motor vehicle, no matter how careful he may be, is held responsible for the actions of the loanee in its use. We have the stream of thought which fixes the responsibility of the principal for the action of his servant, irrespective of the master's absence of personal blame. We have in the instant case to consider the question raised by the operation on a public highway of this recently developed hybrid transportation device, the mechanically motivating part of which is in part an independently owned unit, added to which we have a semi-trailer unit, in which is carried the freight which furnishes the financial motivation, which rear half of this transportation unit is owned by the defendant.

Courts no longer look at the factual scene before them through the stigmatic lenses devised by legalistic ingenuity. It is apparent that these great caravans upon our highways, whose potentiality for destruction under modern conditions is almost incalculable, may, if the independent contractor doctrine is extended to cover this field, by the hiring of a financially circumscribed owner and operator of a " puller," leave the plaintiff, negligently injured by this new transportation unit, with a judgment of recovery for damages fluttering impotently in a cleverly devised financial vacuum.

Changing conditions of fact require adaptation of law to meet new conditions as they arise. Our judiciary by a process of adaptation has created at least ninety per cent of the rules of law that govern legal relationship in the conduct of our ordinary affairs.

It is determined, therefore, that the rule of independent contractor should not be extended into this new field, and that the defendant be held responsible.

I find the damage of plaintiff to be $350. Let judgment for this amount be entered.